# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| SEAN WALL, et al., | Civil Action No. 15-8982 (PGS) |
| Plaintiffs, | |
| v. | MEMORANDUM OPINION |
| BIL-JIM CONSTRUCTION CO., INC., et al. | |
| Defendants. | |

**BONGIOAVNNI, Magistrate Judge**

Currently pending before the Court is Plaintiffs Sean Wall, Tammy Bollinger, Walter Everett and John Horaneck's (collectively, "Plaintiffs") motion to file a Second Amended Complaint. [Docket Entry No. 43]. Defendant Bil-Jim Construction Co., Inc. ("Bil-Jim") opposes Plaintiffs' motion. The Court has fully reviewed the arguments made in support of and in opposition to Plaintiffs' motion. The Court considers Plaintiffs' motion without oral argument pursuant to L.Civ.R. 78.1(b). For the reasons set forth more fully below, Plaintiffs' motion to amend is GRANTED.

## I.  Background and Procedural History

On December 30, 2015, Bil-Jim removed this matter to this Court. (Notice of Removal; Docket Entry No. 1). At that time, Plaintiffs' First Amended Complaint ("FAC") was the operative pleading. Through the FAC, Plaintiffs asserted claims against Bil-Jim for violations of: (1) New Jersey's Prevailing Wage Act ("PWA"), N.J.S.A. 34:11-56.25 *et seq.*; (2) the Fair Labor Standards Act ("FLSA"), as amended, 29 U.S.C. 201 *et seq.*; and (3) New Jersey's Wage and Hour Law ("WHL"), N.J.S.A. 34:11-56a *et seq.* (*See, generally*, FAC; Docket Entry No.

1).[1]  Plaintiffs argue that their PWA claims are connected with "several remediation projects in the aftermath of the weather event commonly referred to as Superstorm Sandy ("Sandy")"; whereas their FLSA and WHL claims are "for overtime pay on projects almost entirely unrelated to Sandy." (Pl. Br. at 1; Docket Entry No. 43-1).

Plaintiffs argue that since filing the FAC new information has come to light regarding "the identity and nature of the various post-Sandy projects." (*Id*.)  In particular, Plaintiffs focus on projects under taken by two construction companies that "contracted with the State of New Jersey to perform two of the major post-Sandy recovery efforts[:]" (1) AshBritt, Inc. and/or AsshBritt Environmental (collectively "Ash Britt"), the "Ash Britt Project"; and (2) CrowderGulf, Inc. ("Crowder Gulf"), the "Crowder Gulf Project."  Plaintiffs argue that these two projects differed in several significant ways.  For example, Plaintiffs contend that the Ash Britt Project "involved the repair, restoration, and/or remediation of dry land on the barrier island in and around . . . the eastern terminus of the Mantoloking Bridge[,]" while the Crowder Gulf Project "involved, among other things:  (i) repairing/altering Barnegat Bay by restoring it to pre-Sandy [d]epths, and making it navigable again, through the removal of debris and sand washed over land and deposited in the bay by Sandy; and (ii) the retrieval (through dredging) of that over-washed sand, then screening/cleaning it, and using it to replenish/reconstruct/repair the nearby beaches, sand dunes and sand bars." (*Id*. 2-3).  Plaintiffs note that the Ash Britt project began in November 2012 and ended in May 2013, while the Crowder Gulf Project began in May 2013 and ended in January 2014.  (*Id*.)  They further note that the bidding on the Crowder Gulf Project, unlike the Ash Britt Project, involved an electronic Q&A session regarding the

---

[1] Plaintiffs' FAC also asserted claims against individual defendants who were dismissed from this matter by the District Court's Order of March 8, 2016.  (Docket Entry No. 22).

applicability of the PWA to that project, which implicates additional discovery not relevant to the Ash Britt Project.

Plaintiffs argue that given the differences in the projects, including differences between "the associated subcontractors, sub-subcontractors, workers, trades/crafts, PWA legal analysis and rate determinations[,] [a]ny actions involving these projects would be unrelated." (*Id*. at 3). In this regard, Plaintiffs note that while the four named Plaintiffs happened to work on both the Ash Britt and Crowder Gulf Projects, many new putative class members who have been identified only worked on one. Plaintiffs further note that many of the identified new putative class members were not employees of Bil-Jim and, consequently, would not be properly named parties as this suit currently stands.

In light of the above, Plaintiffs contend that claims arising from the Ash Britt Project do not belong in the same case as claims arising from the Crowder Gulf Project. (*Id*. at 4). They similarly maintain that the FLSA/WHL overtime claims, which pertain to Bil-Jim alone, do not belong in any lawsuit arising from either of the aforementioned projects. Indeed, they claim that the only common thread among the foregoing is Bil-Jim, which was just one of many subcontractors on each project and which supplied only a fraction of the sub-subcontractors working on same. Plaintiffs argue that this largely insignificant similarity should not prevent them from being the master of their own claims.

As a result, Plaintiffs seek to file a Second Amended Complaint ("SAC"). In same, they seek to make the following substantive changes: (1) add the Ash Britt entities as defendants; (2) set forth allegations that only relate to the Ash Britt Project; (3) assert a cause of action for PWA violations only (remove the FSLA and WHL claims); (4) include in the putative class similarly situated employees of subcontractors and sub-subcontractors on the Ash Britt Project only; (5)

3

remove the individual defendants from the caption and factual allegations based on the District Court's March 8, 2016 Order (Docket Entry No. 22); and (6) add Maple Lake, Inc. ("Maple Lake") as a defendant. (*Id*. at 4-5). Plaintiffs argue that their motion should be granted because Plaintiffs are the master of their Complaint and their proposed amendments will neither prejudice Bil-Jim nor unreasonably delay these proceedings, and are neither made in bad faith nor are they futile.

Bil-Jim, "[i]n principal . . does not oppose litigation of the two contracts in separate actions provided, however that the two actions are commonly managed with coordinated discovery." (Def. Opp. at 1). It does, however, oppose Plaintiffs' motion to the extent such a change "leads to duplicative and wasteful discovery in the absence of coordination or, even worse, if it is simply an excuse by Plaintiffs to shop for what they perceive to be a more favorable judge or court for some of their claims." (*Id*.) In this regard, Bil-Jim is confident that, if Plaintiffs' motion to amend is granted, Plaintiffs "intend to file a *separate* action alleging PWA claims against CrowderGulf, Bil-Jim, and other CrowderGulf subcontractors arising out of the CrowderGulf Contract." (*Id*. at 3). Given the "substantial overlap" between the two cases: (1) both involve contracts issued by the State of New Jersey to clean up the damage caused by Sandy; (2) Bil-Jim and likely other subcontractors will be common to both actions; (3) many of the named plaintiffs will be common to both actions; (4) both actions will likely be pled as putative class actions, involving similar class certification issues; and (5) both will involve similar issues of fact and law regarding the PWA, Bil-Jim asks that certain conditions be set if Plaintiffs are permitted to amend. (*Id*. at 3-4).

Specifically, Bil-Jim requests that the Court require:

> (1) the new action is filed in the United States District Court for
> the District of New Jersey . . . and designated as a "related

> case" to the present action so the same district and magistrate judge are assigned;
> (2) the court schedules an early case management conference for both actions, to address consolidation and coordination of the two actions for discovery and pretrial purposes; and
> (3) further discovery in the existing action be held in abeyance until the second case management conference, so that any further discovery can be coordinated between the two actions.

(*Id*. at 2). Bil-Jim argues that justice would not be served by any other result. (*See Id*. at 5-7).

## II. Analysis

Pursuant to Rule 15(a)(2), leave to amend the pleadings is generally granted freely "when justice so requires." *See Foman v. Davis,* 371 U.S. 178, 182 (1962); *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). Nevertheless, the Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Id*. However, where there is an absence of undue delay, bad faith, prejudice or futility, a motion for leave to amend a pleading should be liberally granted. *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004).

Bil-Jim's "opposition" centers around its argument that justice requires any future action filed regarding the Crowder Gulf Project be marked "related" and coordinated with this matter if Plaintiff's motion to amend is granted. The Court finds that Bil-Jim's argument is not a reason to deny Plaintiffs' motion. While the Court agrees that the economies and efficiencies of litigation are best served when matters involving common sets of operative facts, common questions of law, overlapping parties and overlapping witnesses are coordinated for discovery purposes, the Court shall not at this juncture impose the conditions requested by Bil-Jim. At this time, it is unclear whether and when a separate suit involving the Crowder Gulf Project will be filed. It is equally unclear whether this Court will ultimately have jurisdiction over same. If

5

such a suit is filed and if the Court has jurisdiction over same, then it may be appropriate based on the allegations contained in the anticipated Crowder Gulf case for that case and this to be marked related. The Court notes that pursuant to L.Civ.R. 40.1 counsel is obligated to inform the Clerk of the Court at the time of filing if the matter being filed relates to a pending cause of action. If the anticipated Crowder Gulf matter is filed in federal court and the plaintiffs do not mark it as related, believing it is not, then Bil-Jim, assuming it is a defendant, may make a request that it be deemed so and assigned to the appropriate District and Magistrate Judges. The Court shall rule on the propriety of such a request at that time. If the matter is filed in state court and the defendants remove it, they can request that it be treated as a related case at the time of removal. This is sufficient to protect Bil-Jim's concerns.

As a result, Plaintiffs shall be permitted to file their proposed SAC. They are directed to do so no later than **August 25, 2017**.

### III. Conclusion

For the reasons state above, Plaintiffs' motion seeking leave to file a SAC is GRANTED. An appropriate Order follows.

Dated: August 16, 2017

                                          s/ Tonianne J. Bongiovanni
                                          **HONORABLE TONIANNE J. BONGIOVANNI**
                                          **UNITED STATES MAGISTRATE JUDGE**